LIDDLE, Respondent, vs. UTLEY (Garnishee defendant), Appellant.

*May 9—June 18, 1928.*

For the appellant there was a brief by *Waller & Ruzicka* of Burlington, attorneys, and *Foley, Brach & Colbert* of Racine, of counsel, and oral argument by *Gilbert E. Brach* and *F. J. Ruzicka.*

For the respondent there was a brief by *E. L. von Suessmilch* of Delavan, attorney, and *Jeffris, Mouat, Oestreich, Avery & Wood* of Janesville, of counsel, and oral argument by *Hiram M. Nowlan* and *Otto A. Oestreich,* both of Janesville.

CROWNHART, J. The trial court found that the garnishee defendant, Harrie Utley, was possessed of property of the defendant Sutton amounting to $1,050, less certain undisclosed expense which Utley had obtained from Sutton as hush-money, that is, to maintain silence as to certain criminal transactions of Sutton. The main contention on this appeal is that the evidence does not warrant such finding. There is not much dispute in the evidence, and the finding of the court depends largely on inferences from admitted facts.

Sutton was a dealer in used cars and lived at Delavan. Utley also lived at Delavan. On October 1st Utley bought a used Packard car from Sutton, paying $1,150 in cash and turning in an older Packard at the exchange value of $750. October 1st was on Friday. On Saturday following the Packard people in Chicago notified Utley that the car he had purchased from Sutton was a stolen car, according to their information. On Monday they gave Utley positive information to the same effect. Monday evening Utley had a talk with Sutton about the deal. He took Sutton out into the country and there, sitting in his automobile, he discussed the matter of the stolen automobile with Sutton. Asked why he took Sutton into the country to converse about the car, Utley testified:

"Well, I thought if I got him out in the country and had his full and undivided attention it would be much better than having a conference in the sales room where there were possibly five or six people. I wasn't sure this car was stolen. They thought it was stolen. I was protecting myself in time. I didn't want to stir up any enemies."

As a result of the meeting Monday night Utley claimed that Sutton agreed to get him a new Packard worth $2,900 in seven to ten days, and to put up a guaranty of $2,200 to protect Utley. Then he and Sutton went back to the bank at Darien, where they met the cashier, a Mr. Scobie. Sutton passed the time of day with the cashier

"and commenced to stammer and stutter a little, . . . and I [Utley] just simply spoke up and told them that I had traded a car with Sutton and the agreement between him and I was that if this car was not perfectly satisfactory I was to return it to him, and I asked the banker to guarantee me two thousand dollars, give me a time of three days to decide whether I was to keep this car or whether I wasn't. That would give me time enough to get hold of Chicago and find out whether it was stolen property or not, and he said he would. . . . Scobie said he would guarantee me two thousand dollars, and in the conversation at the time Sutton speaks up and

says to this banker: 'I have only got about $1,600 or $1,700 in the bank.' The banker speaks up and says, 'We have done business enough with you to know that you can go and get it if you want to,' and he says, 'Yes, I have got it in the office, I will get it in the morning,' which he must have done. . . . On the following Tuesday,—this would be Monday,—on the following Tuesday I picked Sutton up in Delavan in the presence of these two gentlemen and drove to Darien, and on the road to Darien Sutton made this proposition: that he would leave a check in the Citizens Bank for $2,200 or in the Darien bank for $2,200, and that he guaranteed to me that he would deliver a brand new Packard of the same type, same year, with accessories, insured, license, extra tire, same as we were riding in, and that it would be done inside of seven to ten days, and that at the delivery of that car I should turn over to him this check that he gave me or the $2,200. . . . This was a brand new one right off from the floor. I might add right there, that when he gave me this check he handed it over to Scobie and I asked to see the check. It was made out payable to Harrie Utley for $2,200. It was at that time I asked Scobie to certify the check, when he did, and it was left in the Darien bank. I got the check next day after I heard that he had flown. I didn't wait nine or ten days. The understanding was that I was to turn over the check or $2,200 to him. The check was just as good in my hands as any one else. I cashed the check and paid off the mortgage on my place."

Utley further testified that he did not have any conversation with Sutton in the presence of Scobie, the bank cashier. He did not want Scobie to know anything about the deal. But Scobie testified that he knew Sutton from the time he sold his first car, January 15, 1926, until the "blow-up" October 5th. He remembered two meetings with Sutton and Utley. He said: '

"I remember the occasion concerning the testimony relative to Mr. Utley, Sutton, and myself. A check of $2,200 was given as a result thereof; that was on Tuesday. The conversation and substance on the first day was, Mr. Utley and Mr. Sutton came into the bank and wanted to see me. As Mr. Young wasn't there I was alone. We went back in

the consultation room or the back room of the bank and Mr. Utley said: 'Now this car—I have just purchased a car from Mr. Sutton,' . . . and he said: 'Now, Mr. Sutton has agreed that if this car is not satisfactory in two or three days that I am to return it to him and he wants you to guarantee about $2,000;' and I told Mr. Sutton at that time that he hadn't quite that amount in the bank. Well, he said he had it at his office and he was in the habit of bringing big checks to the bank, and so I asked him if he would bring it over in the morning and he said 'yes,' and then I told Mr. Utley that I would guarantee the $2,000, as Sutton had always done as he agreed. Then the following Tuesday,—that was on a Monday night, or afternoon, I think,—Tuesday, about between two and three o'clock,—I know just after they went out we balanced up the bank, so I know it was between two and three o'clock somewhere,—they came into the bank again and then I knew very likely that Mr. Utley wasn't satisfied with the car. So I was called in the back room again. They wanted to see me, and Mr. Utley said: 'Mr. Scobie,' he says, 'this car that I received from Mr. Sutton is not satisfactory and he agrees to give me a check,' and he said: 'Mr. Sutton, I gave you $1,150 in cash and what do you—you say the amount.' . . . Mr. Sutton said: 'How is $2,200?' and Mr. Utley looked a minute toward the ceiling and he said 'K. O. Make me out a check and have Jim certify the check.' At that time he had $2,200 in the bank and Mr. Sutton made the check payable to Mr. Utley and I certified the check for $2,200. Then Mr. Utley said: 'We will leave it here at the bank, and when another car is furnished me I will turn over this $2,200,' and so I put it in our note file, and just as I put it in our note file it came to my mind whether or not the two of them must be present, so I went to the door. Mr. Utley was on the sidewalk and I says: 'Do both parties have to be present when this check is delivered?' and he said 'No,' and that was all until we turned the check over to Mr. Utley."

The upshot of the affair was that on Friday Utley went to see the sheriff. He then made a secret deal with Sutton; had a meeting with the banker, where he told him a wrong version of the deal, keeping his well-founded suspicions silent that Sutton was a criminal receiver of stolen goods;

he finally obtained from Sutton a certified check for $2,200 and recaptured his old car, leaving him a net gain on a $1,900 deal of $1,050, and Sutton fled the country without any hindrance on the part of Utley. His version of the matter on the witness stand is not worthy of belief. The conclusion of the court came as a reasonable inference from all the testimony. No doubt the appearance of the witness on the stand impressed the court with his lack of sincerity, as well as it does this court.

If, as a fact, as the court found, the agreement or understanding between Sutton and Utley was that in consideration of the excess value turned over to Utley by Sutton, Utley was to keep silent as to Sutton's criminal dealings in stolen automobiles, then Utley gained no title thereto, such agreement being contrary to public policy. We think the evidence supports the findings of fact.

The purported agreement between Sutton and Utley was oral, and respondent contends that it was void as within the statute of frauds. In our view of the case the judgment of the county court should be affirmed on the merits.

*By the Court.*—Judgment affirmed.